# United States Court of Appeals
# for the Sixth Circuit
## CASE NO. 24-3404

HUNTER DOSTER; JASON ANDERSON; MCKENNA COLANTANIO; PAUL CLEMENT; JOE DILLS; BENJAMIN LEIBY; BRETT MARTIN; CONNOR MCCORMICK; HEIDI MOSHER; PETER NORRIS; PATRICK POTTINGER; ALEX RAMSPERGER; BENJAMIN RINALDI; DOUGLAS RUYLE; CHRISTOPHER SCHULDES; EDWARD STAPANON, III; ADAM THERIAULT; DANIEL REINEKE, *on behalf of themselves and others similarly situated*,

    *Plaintiffs - Appellants*

v.

HON. FRANK KENDALL, III, In his official capacity as Secretary of the Air Force; LT. GENERAL ROBERT I. MILLER, In his official capacity as Surgeon General of the Air Force; LT. GENERAL BRIAN S. ROBINSON, In his official capacity as Commander, Air Education and Training Command; LT.GENERAL JOHN P. HEALY, In his official capacity as Commander, Air Force Reserve Command; LT. GENERAL TONY D. BAUERNFEIND, In his official capacity as Commander, Air Force Special Operations Command; UNITED STATES OF AMERICA,

    *Defendants - Appellees*

---

Appeal from the U.S. District Court, Southern District of Ohio, 1:22-cv-00084

---

## PLAINTIFFS/APPELLANTS' BRIEF

---

Christopher Wiest (OH 00777931)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
Tel: 513/257-1895
chris@cwiestlaw.com

Thomas B. Bruns (OH 0051212)
Bruns Connell Vollmar & Armstrong
4555 Lake Forrest Drive, Suite 330
Cincinnati, Ohio 45242
Tel.: 513/312-9890
tbruns@bcvalaw.com

Aaron Siri
Elizabeth A. Brehm
Wendy Cox

SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: 888/747-4529
aaron@sirillp.com
ebrehm@sirillp.com
wcox@sirillp.com

*Attorneys for Plaintiff/Appellants*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, Plaintiffs/Appellants (“**Plaintiffs**”) are not subsidiaries or affiliates of a publicly owned corporation. There is no publicly owned corporation, not a party to the appeal, which has a financial interest in the outcome.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................... i

TABLE OF AUTHORITIES ................................................. iv

STATEMENT CONCERNING ORAL ARGUMENT ...........................................

JURISDICTIONAL STATEMENT .................................................... 1

STATEMENT OF THE ISSUES ........................................................ 1

INTRODUCTION ...................................................................... 1

STATEMENT OF THE CASE AND FACTS......................................... 3

   I.   BACKGROUND ............................................................ 3

   II.  PROCEDURAL HISTORY ............................................... 9

      A. The Preliminary Injunction Proceedings And Hearing ............................ 9

      B. Congress ends the Vaccination Mandate, and the Department of Defense and the DAF act to remedy most, but not all, of the harm ......................13

SUMMARY OF THE ARGUMENT ................................................16

STANDARD OF REVIEW ............................................................16

ARGUMENT............................................................................17

   I.   THE CASE IS NOT MOOT, BECAUSE ALL OF THE HARM SUFFERED BY PLAINTIFFS WAS NOT REMEDIED............................17

   II.  THE FAILURE TO PROVIDE THE EQUITABLE REMEDY OF BACK PAY AND BACK RETIREMENT POINTS MEANS FULL RELIEF HAS NOT BEEN AFFORDED, AND THE CASE IS NOT MOOT ..................19

   III.THE DISTRICT COURT'S ERRONEOUS DETERMINATION THAT THE ISSUES OF BACK PAY AND POINTS WERE NOT PROPERLY RAISED IGNORES THE RECORD IN THIS CASE TO THE CONTRARY AND MISSTATES APPLICABLE FEDERAL LAW ................................25

   IV.DEFENDANTS WAIVED ANY SOVEREIGN IMMUNITY DEFENSE TO THESE CLAIMS BY FAILING TO ASSERT THAT DEFENSE IN THEIR ANSWER....................................................................27

   V. DEFENDANTS' ACTIONS, IN ARGUING AGAINST IRREPARABLE HARM BECAUSE BACK PAY AND RESTITUTIONARY RELIEF COULD BE AWARDED IN FINAL JUDGMENT, TRIGGERED JUDICIAL ESTOPPEL AGAINST THEM FROM LATER ARGUING,

OR THE DISTRICT COURT FROM ADOPTING, THE OPPOSITE
POSITION ................................................................................................27

CONCLUSION ...........................................................................................31

CERTIFICATE OF SERVICE..................................................................... 0

CERTIFICATE OF COMPLIANCE.............................................................. 0

APPENDIX -- DESIGNATION OF THE DISTRICT COURT RECORD............. 0

# TABLE OF AUTHORITIES

## Cases

*Albemarle Paper Co. v. Moody*,
422 U.S. 405 (1975) ......................................................................21

*Alexander v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers*, *AFL-CIO,* 565 F.2d 1364 (6th Cir. 1977) ...........................................22

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998) ........................................................22

*Audio Technica U.S., Inc. v. United States,*
963 F.3d 569 (6th Cir. 2020) ........................................................28

*Ayala v. United States*,
624 F. Supp. 259 (SDNY 1985).....................................................23

*Barnick v. United States*,
591 F.3d 1372 (Fed. Cir. 2010)......................................................22

*Bell v. Hood*,
327 U.S. 678 (1946) ......................................................................21

*Borst v. Chevron Corp.,*
36 F.3d 1308 (5th Cir. 1994) ..................................................20, 24

*Bowen v. Massachusetts,*
487 U.S. 879 (1998) ......................................................................24

*Browning v. Levy*,
283 F.3d 761 (6th Cir. 2002) ........................................................28

*Chafin v. Chafin*,
568 U. S. 165 (2013) .....................................................................16

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
494 U.S. 558 (1990) ................................................................20, 24

iv

*Chilcott v. Orr,*
   747 F.2d 29 (1st Cir. 1984) .......................................................................10, 30

*Church v. Biden*,
   --- F. Supp. 3d ---, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ...................10, 30

*Cimerman v. Cook*,
   561 Fed. Appx. 447 (6th Cir. 2014) ...................................................................21

*Coleman v. GMAC*,
   296 F.3d 443 (6th Cir. 2002) ............................................................................22

*Crugher v. Prelesnik*,
   761 F.3d 610 (6th Cir. 2014) ............................................................................21

*Demis v. Sniezek,*
   558 F.3d 508 (6th Cir. 2009) ............................................................................16

*DeVargas v. Mason & Hanger-Silas Mason Co*.,
   911 F.2d 1377 (10th Cir. 1990) (dicta), cert. denied, 111 S. Ct. 799 (1991).......25

*Dilley v. Alexander,*
   627 F.2d 407 U.S. App. D.C. 354 (D.C. Cir. 1980) ...........................................22

*Doster v. Kendall*,
   2022 U.S. Dist. LEXIS 137068 (SDOH 2022).................................................. 2

*Doster v. Kendall*,
   342 F.R.D. 117 (SDOH 2022) .......................................................................... 2

*Doster v. Kendall*,
   48 F.4th 608 (6th Cir. 2022) ........................................................................2, 23

*Doster v. Kendall*,
   596 F. Supp. 3d 995 (SDOH 2022).........................................................2, 13, 30

*Downie v. Independent Drivers Ass'n Pension Plan*,
   934 F.2d 1168 (10th Cir. 1991) ........................................................................22

*Edwards v. Aetna Life Ins. Co.*,
   690 F.2d 595 (6th Cir. 1982) .............................................................28

*Firefighters Local Union No. 1784 v. Stotts*,
   467 U.S. 561 (1984) ..........................................................................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U. S. 167 (2000) .........................................................................16

*Gleason v. Malcom*,
   718 F.2d 1044 (11th Cir. 1983) ........................................................25

*Guitard v. U.S. Sec'y of Navy*,
   967 F.2d 737 (2d Cir. 1992) ......................................................10, 30

*Harkless v. Sweeny Independent School Dist.*,
   427 F.2d 319 (5th Cir. 1979) ............................................................20

*Hartikka v. United States*,
   754 F.2d 1516 (9th Cir. 1985) ...................................................10, 30

*Howe v. City of Akron*,
   801 F.3d 718 (6th Cir. 2015) ............................................................21

*Hubbard v. Administrator, EPA*,
   982 F.2d 531 (D.C. Cir. 1992) ..........................................................24

*Hunter v. Hamilton Cty. Bd. of Elections*,
   850 F. Supp. 2d 795 (S.D. Ohio 2012)..............................................27

*Kendall v. Doster*,
   144 S. Ct. 481 (2023)........................................................................17

*Ky. v. Biden*, 23 F.4th 585, 611, fn.19 (6th Cir. 2022) ...........................30

*Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) .......................... 30

*Knox v. SEIU, Local 1000,*
   567 U.S. 298 (2012) ....................................................................................16

*Ku v. State of Tenn.*,
   322 F.3d 431 (6th Cir. 2003) ......................................................................27

*Lawson v. Shelby Cry., Tenn.*,
   211 F.3d 331 (6th Cir. 2000) ......................................................................27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ....................................................................................19

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ..............................................................................28, 29

*Nixon v. United States*,
   290 U.S. App. D.C. 420, 938 F.2d 239 (D.C. Cir. 1991)...............................25

*Ohio v. United States EPA*,
   969 F.3d 306 (6th Cir. 2020) ......................................................................17

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ....................................................................................28

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946) ....................................................................................20

*Ramsek v. Beshear*,
   989 F.3d 494 (6th Cir. 2021) ......................................................................17

*Reeb v. Ohio Dep't of Rehab. & Corr., Belmont Corr. Inst.,*
   435 F.3d 639 (6th Cir. 2006) ......................................................................22

*Schelske v. Austin,*
   2023 U.S. Dist. LEXIS 163101 (NDTX 2023) .....................................19, 20, 23

*Sibron v. New York*,
   392 U.S. 40 (1968) ......................................................................................18

*Sosna v. Iowa,*
    419 U.S. 393 (1975) ........................................................................17

*Tanzin v. Tanvir,*
    141 S. Ct. 486 (2020)......................................................................19

*Teledyne Indus., Inc. v. NLRB,*
    911 F.2d 1214 (6th Cir. 1990) ........................................................28

*Tull v. United States,*
    481 U.S. 412 (1987) ..................................................................20, 24

*Turker v. Ohio Dep't of Rehaabilitation & Corrections,*
    157 F.3d 453 (6th Cir. 1998) ..........................................................21

*U.S. Navy Seals 1-26 v. Biden,*
    27 F.4th 336 (5th Cir. 2021); ..........................................................19

*Ulmet v. United States,*
    888 F.2d 1028 (4th Cir. 1989) ........................................................25

*United States v. Concentrated Phosphate Export Assn.,*
    393 U.S. 199 (1968) ........................................................................16

*United States v. Universal Mgmt. Servs.,*
    191 F.3d 750 (6th Cir. 1999) ..........................................................26

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) ........................................................................17

*Valentine-Johnson v. Roche,*
    386 F.3d 800 (6th Cir. 2004) ..............................................28, 29, 30

*Wenrich v. Empowered Mgmt. Sols. LLC,*
    2019 U.S. Dist. LEXIS 130041 (D. Co. 2019) ................................25

*West v. Gibson,*
    527 U.S. 212 (1999) ........................................................................21

**Statutes**

28 U.S.C. §1291 ....................................................................... 1

37 U.S.C. § 206 ......................................................................23

Fed. R. Civ. P. 54(c) ............................................................26

Fed. R. Civ. P. 23(b)(2)........................................................22

42 U.S.C. §2000bb-42 U.S.C. §2000bb-4
    Religious Freedom Restoration Act of 1993 ("RFRA")............................*passim*

28 U.S.C. § 1346(a)(2)
    Tucker Act...............................................................23

**STATEMENT CONCERNING ORAL ARGUMENT**

This case raises substantive issues regarding the scope of relief permitted under the Religious Freedom Restoration Act of 1993 ("RFRA") (42 U.S.C. §2000bb-42 U.S.C. §2000bb-4) among other significant legal issues. As such, it presents important issues for this Court and oral argument is warranted.

## JURISDICTIONAL STATEMENT

The District Court had federal question jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §1331. On March 18, 2024, the District Court dismissed the matter on mootness grounds. [Opinion, Doc. 127, PageID#5987-5998; Judgment, Doc. 128, PageID#5999.] A timely notice of appeal was filed on May 8, 2024. [Notice of Appeal, Doc. 132, PageID#6194-6195.] Accordingly, this Court has jurisdiction over Plaintiffs' appeal under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

This appeal presents the following question: Did the District Court err as a matter of law by determining the matter moot where unremedied harm remained?

## INTRODUCTION

Defendants/Appellees ("Defendants"), all Air Force Officials sued in their official capacities, implemented a mandatory COVID-19 vaccine requirement for the branch ("Vaccination Mandate"). Plaintiffs were active-duty members and reservists of the Air Force, most of whom were stationed at Wright Patterson Air Force Base in Ohio. Defendants illegally denied the vast majority of religious accommodation requests to their Vaccination Mandate including Plaintiffs' requested accommodations. Two of the named Plaintiffs, Senior Airman Joseph Dills ("SRA Dills") and Senior Master Sergeant Chris Schuldes ("SMSgt. Schuldes"), and numerous members of the class, all of whom refused to compromise

their well-founded religious beliefs to get the COVID-19 vaccine, were disciplined by Defendants with reprimands in their files and were placed on a "no points, no pay" status effective January of 2022. That meant Plaintiffs (and similarly situated class members) could not attend drills or receive pay for attending those drills and did not receive points towards their military retirements.

In March of 2022, Plaintiffs moved for a preliminary injunction and sought restoration of lost pay and lost points, but although the District Court did issue an injunction in favor of the named Plaintiffs, the District Court's order did not include this requested relief. *Doster v. Kendall*, 596 F. Supp. 3d 995 (SDOH 2022). In fact, Defendants argued, and the District Court accepted, that Plaintiffs could receive restitution of back pay and back retirement points in a final judgment and, thus, that sort of harm, although recoverable, was not irreparable. *Doster*, 596 F. Supp. 3d 995, 1019.

Thereafter, a class was certified, and the injunctive relief was extended to restore class members to a pay and points status in July of 2022. *Doster v. Kendall*, 342 F.R.D. 117 (SDOH 2022); *Doster v. Kendall*, 2022 U.S. Dist. LEXIS 137068 (SDOH 2022). *See, Doster v. Kendall*, 48 F.4th 608 (6th Cir. 2022).

Then, in December of 2022, Congress enacted legislation directing the Department of Defense and its component branches to repeal the Vaccination Mandate. In January and February of 2023, Defendants took steps to remove *most*

adverse actions, such as reprimands, but they declined to fully remedy their discrimination and remove its effects root and branch, including by refusing to restore reservist Plaintiffs' records to reflect continued reserve service from January to July of 2022, refusing to restore Plaintiffs' lost retirement points during that same period, and refusing to restore lost back pay for that same period.

Further, Defendants then pulled a bait and switch in their argument that Plaintiffs' case was moot when Defendants took a position contrary to their position from the preliminary injunction proceeding; Defendants now argued that the District Court was "without authority" to correct the back pay and back points issue. The District Court erroneously concluded that Defendants' failure to take these steps did not matter and held that the case was moot because, allegedly, the District Court could not order the requested relief.

## STATEMENT OF THE CASE AND FACTS
**I.    BACKGROUND**

The Department of the Air Force ("DAF") had a Vaccination Mandate for COVID-19 imposed by the Secretary of the Air Force ("SECAF"). [Appendix, Doc.11-1, PageID#327; Doc.11-2, PageID#328-329.] The DAF implemented a process for handling religious accommodation requests to the Vaccination Mandate,

which included a process for determining sincerity of beliefs.[1]

Each of the eighteen original Plaintiffs underwent this process in their pursuit of a temporary religious exemption to the Vaccination Mandate. All timely submitted their religious accommodation requests, and all had a DAF Chaplain confirm the sincerity of their beliefs and the substantial burdening of those beliefs by the Vaccination Mandate. [Compl., Doc.1, PageID#1-22; Appendix, Doc.11-1 through 11-21, PageID#324-573; Declarations of Plaintiffs, Doc.30-3 through 20, PageID#2091-2149.] All then received initial denials and took appeals, with all but four Plaintiffs (Plaintiffs Anderson, Leiby, Norris and Ruyle were still waiting a decision on final appeal when the Preliminary Injunction was entered) receiving denials by the Surgeon General of their final appeal. [Appendix, Doc.11-1 through 11-21, PageID#324-573; Doc.19-1, PageID#943-947; Notice, Doc.38-1 through 38-6, PageID#2631-2665; Notice, Doc.60-1, PageID#4281-4359.]

After denial of their final appeals, every DAF member was subjected to an order from his or her commander to vaccinate or else. The order stated: "Failure to

---

[1]    *See* Air Force Instruction 52-201, https://static.e-publishing.af.mil/production/1/af_hc/publication/dafi52-201/dafi52-201.pdf (last accessed 8/22/2022); Department of Defense Instruction 1300.17, https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130017p.pdf (last accessed 8/22/2022); https://www.af.mil/News/Article-Display/Article/2882742/daf-processes-religious-accommodations-requests/ (last accessed 8/22/2022). The Court can take judicial notice of Government websites. *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 947, fn.3 (6th Cir. 2020).

comply with this lawful order may result in administrative and/or punitive action for Failing to Obey an Order under Article 92, Uniform Code of Military Justice." [Doster Dec., Doc. 19-1, PageID#943-947.]

Based on statistics DAF published on March 28, 2022, Defendants, as of that date, had granted 1,102 medical exemptions and 1,407 administrative exemptions to the Vaccine Mandate.[2] As of that same date, the DAF had only granted 25 religious accommodations and denied 6,143 (a 99.6% disapproval rate).[3] *Id.* Not one single religious exemption had been granted without that member also being eligible for an administrative exemption (i.e., being at the end of their term of service). [Dec. Wiest, Doc.30-2, PageID#2084-2090, with transcript attached; Dec. Wiest, Doc.74-2, PageID#4527.]

All of this evidence simply reconfirmed Plaintiffs' verified complaint, which pled that the DAF adopted a *de facto* systemic policy to deny religious exemption requests other than for members at the end of their term of service, while granting thousands of medical and administrative exemptions. [Ver. Compl. ¶¶ 51-52, 54, Doc.1, PageID#13-14.]

---

[2]       https://www.af.mil/News/Article-Display/Article/2959594/daf-covid-19-statistics-march-2022/ (last accessed 9/17/2022).

[3] The Government cited data from July 2022, which was after the District Court entered its relief in this case, noting 135 accommodations granted; all of them were within the end-of-service exception, and this still reflects a 98.7% disapproval rate.

Defendants' own witnesses and documents provided the proof of the DAF's systemic religious discrimination. For instance, Colonel James Poel's testimony documented the systemic denial of religious exemption requests due to a stated goal of accommodating even more medical exemptions. [Dec. Poel, Doc.25-17 at ¶7, PageID#1430-1450.] Consequently, the DAF treated medical exemptions as a protected class at the expense of an actual protected class. *Id.* Just as damning to Defendants' claims, Colonel Poel also admitted that "both natural and vaccine immunity decrease the risk of infection," and that previous infection likely provides thirteen times greater protection against reinfection or breakthrough infection compared to vaccination alone. *Id.* at ¶23 (emphasis added). In short, the DAF's own evidence established that there was no compelling need to force vaccination on those with natural immunity (where the CDC had advised that over 95% of Americans already had immunity to COVID-19).[4]

Further demonstrating systemic religious discrimination, Colonel Artemio Chapa testified that medical exemptions were granted for various conditions, including pregnancy, adverse reactions, allergies, and the like, yet the DAF granted almost no religious accommodation requests, and the few they did grant were no different than those granted for medical or administrative reasons alone. [Doc.25-

---

[4] https://covid.cdc.gov/covid-data-tracker/#nationwide-blood-donor-seroprevalence (last accessed 9/19/2022).

12, PageID#1395-1403.] For instance, the DAF granted a "medical exemption for allergic reactions to the vaccine or components of the vaccine" to allow for a new vaccine to become available that would not present these same risks, yet it was not willing to allow time for a morally unobjectionable COVID-19 vaccine to become available. *Id.*

Significantly, DAF policy allowed members who received medical exemptions to be considered medically fit for duty despite their unvaccinated status; yet those few "lucky" members who received religious exemptions, and the thousands of members either denied or still waiting for religious exemptions, were determined by the DAF to be unfit for duty. *Id.* at ¶7. Further, those receiving medical exemptions would not necessarily lose their eligibility for deployment because such determinations were made on a case-by-case basis; yet every member with a religious exemption was deemed automatically not fit for deployment. *Id.* at ¶14.

Like medical exemptions, blanket administrative exemptions were granted for a variety of reasons. *Id.* at ¶¶17-18. For example, administrative exemptions were granted to any member who was within six months of retirement. Given average terms of service, an estimated five percent of the entire DAF (which consists of the more senior and experienced members) were eligible for this exemption. Yet, while the DAF willingly accommodated approximately 5 percent of its members, it refused

to accommodate the less than two percent of its members it confirmed as having valid religious exemption requests, claiming it was unable to do so.

The case of Major Andrea Corvi [Doc.53-1, PageID#3762-3789] brought Defendants' unlawful discriminatory practices into sharp focus. The DAF granted Major Corvi a temporary medical exemption for pregnancy, and she was accommodated by keeping her job duties, assignments, and work interactions the same throughout her pregnancy, including not limiting in any manner her ongoing interactions with over 75 members in her squadron. *Id.* However, after she delivered her child, and despite confirming the sincerity of her religious beliefs and the substantial burden on those beliefs, Defendants then denied her request for a temporary religious exemption after she was no longer pregnant. *Id.* Admittedly, the DAF was able to and did accommodate Major Corvi during her pregnancy, but then refused to temporarily continue that accommodation for her well-founded religious beliefs. This evidence was consistent with other record evidence from Defendants confirming a blanket policy by the DAF of granting medical exemptions for pregnant members – regardless of duty station, job assignment, or any other individual factor – despite the recommendation by the CDC for pregnant members to be vaccinated. [Dec. Cox, Doc.74-1, PageID#4519-4526.]

The DAF ordered its commanders to actively enforce the Vaccination Mandate. On December 7, 2021, Secretary Kendall issued a Memorandum to the DAF which included the following:

> Commanders **will take** appropriate **administrative and disciplinary** actions consistent with federal law and Department of the Air Force (OAF) policy in addressing service members who refuse to obey a lawful order to receive the COVID-19 vaccine and do not have a pending separation or retirement, or medical, religious or administrative exemption. Refusal to comply with the vaccination mandate without an exemption **will result in the member being subject to initiation of administrative discharge proceedings**.

[Doc.25-8, PageID#1130-1135 (emphasis added).]

## II.    PROCEDURAL HISTORY

The Complaint in this matter was filed February 16, 2022. [Ver. Compl., Doc. 1, PageID#1-22.] For SRA Dills and SMSgt Schuldes, the Complaint noted that each faced imminent transfer to the Individual Ready Reserve, loss of pay, and loss of retirement benefits. *Id.* ¶¶ 17, 20, 47; PageID#5, 6, 12. The Complaint sought wide-ranging injunctive relief. *Id.* ¶¶ 70, 75; PageID#17-18. Ultimately, Defendants answered and, significantly, did not raise sovereign immunity in their answer. [Answer, Doc. 78, PageID#4542-4553.]

### A.    The Preliminary Injunction Proceedings and Hearing

Plaintiffs sought preliminary injunctive relief on February 22, 2022. [Motion, Doc. 13, at PageID#578-599.] Their motion for injunctive relief included a specific

request, including in tendered orders, relating to the loss of pay and points, specifically for SRA Dills and SMSgt Schuldes, and to prevent the ongoing loss of such pay and points. [Motion, Doc. 13, at PageID#579, 584.]

A proposed order was tendered with that, which requested the following relief:

> To the extent Defendants have taken punitive action against any airman from September 1, 2021 to the present, including but not limited to the named Plaintiffs, including discharges, both punitive or administrative, against any airmen who submitted a religious accommodation request from Defendants' vaccination requirements, and to whom the Defendants confirmed (or did not dispute) the sincerity of the belief at issue, to provide full and complete relief to such persons, including restoration to active duty (or active reserve duty, as the case may be), record expungement, and restoration of pay and allowances.

*Id.* at Doc. 13-6, PageID#814-816.

Defendants opposed the requested injunctive relief and argued:

> Second, Plaintiffs appear to allege that involuntary reassignment to the Individual Ready Reserve and loss of retirement constitutes irreparable harm. *See* Pls.' Mem. 2, 4, Doc. No. 13, PageID 579, 584. **But any such contention is meritless, as military administrative and disciplinary actions, including separation, are not irreparable injuries because the service member could later be reinstated and provided back pay if he prevailed on his claim**. *See, e.g., Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985); *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984); *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992); *Church*, 2021 WL 5179215, at *17.

10

[Opposition to PI, Doc. 25, PageID#1025 (emphasis added).]

On March 25, 2022, the District Court held an evidentiary hearing in this matter. [Tr., Doc.45, 48, PageID#3064-3101, 3206-3348.] Three Plaintiffs testified as representative of the group of eighteen: Lt. Doster, SRA Dills, and Lt. Colonel Stapanon. [Tr., Doc.45, 48, PageID#3066-3100, 3210-3289.] We focus on SRA Dills' testimony because he still has unremedied harm.

SRA Dills testified that he is a member of the Air Force reserves, stationed at Wright Patterson Air Force Base in Dayton, Ohio. [Transcript, Doc. 48 at PageID#3253-3254.] He enlisted and served on active duty starting in approximately 2010 and when that commitment was up, he enlisted in the reserves. *Id.* at PageID#3253. He enlisted to serve his country. *Id.*

SRA Dills testified to his duties in the Air Force reserves, the process he went through to obtain a temporary religious exemption due to his moral objections concerning the use of aborted fetal tissue, his longstanding involvement in his church and faith, his ability to and history of accomplishing his unit's mission while unvaccinated, threats he received for non-compliance with the Vaccination Mandate, and that he worked alongside members with administrative or medical exemptions to the Vaccination Mandate. [Transcript, Doc. 48 at PageID#3252-3267.] He summarized his beliefs regarding the COVID-19 vaccine as follows:

> Well, look, I believe life begins at conception and, you know, I believe in every human being has got

constitutional rights, born and unborn, and also God-given rights; and so I don't believe that, you know, these fetuses would have given consent to use their cells for medicine. And so I'm pro life. I can't say that enough.

And so, you know, as far as myself, you know, I've got three kiddos and I'm their father. They look at me, and I can't waver on my morals and my values. I'm just not going to. And so, you know, if you don't have a solid rock to stand on, what does that make you? Not much of a man, if you ask me. So that's my morals and my values that I strongly believe in. But I believe in protecting the unborn, and so I don't want a part of this vaccine if it is using aborted fetal cells.

*Id.* at PageID#3258.

He then testified what the Air Force did to him for his non-compliance:

Q. And what happened in January of this year?

A. We -- they gave us a -- an LOR, a Letter of Reprimand, and then you had a chance to appeal it. And then basically we were told that we were now on what's called no point, no pay status for six months, so I believe that ends in July, and then right after that we're going to be put on IRR, which is Individual Ready Reserve, for the remainder of our contract. So basically it's a way of kicking us out without kicking us out.

*Id.* at PageID#3262-3263.

At the hearing, Defendants had the burden under RFRA and the First Amendment. Despite this fact, the foregoing Plaintiffs' testimony went unrebutted. In fact, <u>Defendants called no witnesses to testify</u>, implicitly acknowledging that their witnesses would not hold up under cross-examination.

12

In March of 2022, a preliminary injunction issued in favor of the named Plaintiffs, but this relief <u>did not extend</u> to the requested restoration of reservist pay and points. *Doster v. Kendall*, 596 F. Supp. 3d 995 (SDOH 2022). In fact, Defendants argued, and the District Court accepted, that Plaintiffs could receive restitution of back pay and back retirement points in a final judgment and, thus, that sort of harm, although recoverable, was not irreparable. *Doster*, 596 F. Supp. 3d 995, 1019.

**B.    Congress ends the Vaccination Mandate, and the Department of Defense and the DAF act to remedy most, but not all, of the harm**

In December of 2022, Congress enacted legislation directing the Department of Defense, and its component branches, to repeal the Vaccination Mandate.[5] In January[6] and February of 2023,[7] Defendants took steps to remove *most* adverse actions from service member's files, such as reprimands, but Defendants declined to

---

[5] *See* 117th Congress, HR 1776 at Sec. 525; 136 Stat. 2395 at Sec. 525; available at https://www.congress.gov/117/plaws/publ263/PLAW-117publ263.pdf                (last accessed 6/19/2024).

[6] DOD Rescission available at https://media.defense.gov/2023/Jan/10/2003143118/-1/-1/1/SECRETARY-OF-DEFENSE-MEMO-ON-RESCISSION-OF-CORONAVIRUS-DISEASE-2019-VACCINATION-REQUIREMENTS-FOR-MEMBERS-OF-THE-ARMED-FORCES.PDF (DoD rescission; last accessed 6/19/2024); https://media.defense.gov/2023/Jan/24/2003148810/-1/-1/1/DAF%20COVID-19%20%E2%80%8CVACCIN%E2%80%8CATION%20MAN%E2%80%8CDATE%20RESCISSION.PDF (DAF rescission; last accessed 6/19/2024).

[7]    See    DAF    Guidance,    available    at    https://www.af.mil/Portals/1/documents/2023SAF/PolicyUpdates/L6JT_SecAF_Signed_DAF_guide_Adverse_Actions_Religious_Requests_24Feb23.pdf (last accessed 6/19/2024).

fully remedy their discrimination in total and to remove its effects root and branch, including refusing to restore (i) SRA Dills' and SMSgt. Schuldes' (and similarly situated class members') records to reflect continued reserve service from January to July 2022, (ii) lost retirement points, and (iii) lost back pay.

On January 30, 2024, the District Court ordered, via a notation order, simultaneous briefing by the parties as follows: "The parties are ORDERED to provide this Court with supplemental briefing concerning the mootness of this case in its entirety following the Supreme Court's order (Doc. 121). All briefing shall be submitted by February 9, 2024." Notably, the District Court did not permit Plaintiffs to respond to Defendants' filing.

In arguing that the case was moot, Defendants pulled a bait and switch and took a contrary position from their position in the preliminary injunction proceedings, now arguing that the District Court was without authority to restore lost pay and lost points. [Memo, Doc. 124, PageID#5951-5958.]

Plaintiffs demonstrated that neither the named Plaintiffs, nor the class, was made whole – and that the relief they still sought, consisting of lost pay and lost points, had not been restored, substantiating this lost pay and lost points through declarations of SRA Dills and SMSgt Schuldes. [Memo and Declarations in Support, Doc. 125, PageID#5966-5984.] Defendants denied SMSgt. Schuldes $3,436.64 in lost drill pay (i.e., back pay) for the drill weekends he missed from January to August

14

2022. [Dec. Schuldes, Doc. 125-1, PageID#5980-5981.] SMSgt. Schuldes has never had that lost drill pay restored to him and, without an order of this Court, will never have that lost drill pay restored to him. *Id.*

Defendants also denied SRA Dills $ $2,972.56 of in lost drill pay (i.e., back pay) for the drill weekends he missed from January to September 2022. [Dec. Dills, Doc. 125-2, PageID#5982-5984.] SRA Dills has never had that lost drill pay restored to him and, without an order of this Court, will never have that lost drill pay restored to him. *Id.*

Defendants also denied restoring SRA Dills' and SMSgt. Schuldes' lost 32 retirement points, effectively causing them to lose credit for participation in reserve status, which is calculated towards retirement. [Dec. Schuldes, Doc. 125-1, PageID#5980-5981; Dec. Dills, Doc. 125-2, PageID#5982-5984.] Even worse, SMSgt. Schuldes was denied a "good year" of service counting towards retirement, which will require him to serve an additional year even to be eligible to retire. [Dec. Schuldes, Doc. 125-1, PageID#5980-5981.]

These lost reserve retirement points are detrimental because a member's reserve retirement points (to include prior active-duty periods) are calculated in retirement pay calculations. [Dec. Schuldes, Doc. 125-1, PageID#5980-5981; Dec. Dills, Doc. 125-2, PageID#5982-5984.] As a result, unless corrected by order of the Court, Reservist Plaintiffs ultimately will draw less retirement pay when they retire

15

because of the illegal discipline taken against them for not compromising their sincere religious beliefs against taking the COVID-19 vaccine. *Id.*

On March 18, 2024, the District Court held that Defendants' failure to remedy this admitted harm did not matter, that the Court was without authority to afford this requested relief, and that the case was moot. [Order, Doc. 127, PageID#5987-5998.]

### SUMMARY OF THE ARGUMENT

The District Court improperly dismissed the case on grounds of mootness.

### STANDARD OF REVIEW

This court reviews jurisdictional issues, such as mootness determinations, *de novo*. *See Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009). The "heavy burden of persua[ding]" the Court that this matter is moot lies with the Government, not with Plaintiff. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U. S. 167, 189 (2000)*,* quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968). And "a case becomes moot only when it is **impossible** for a court to grant **any** effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U. S. 165, 172 (2013) (internal citations omitted) (emphasis added). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* Thus, if there is any additional relief that can be awarded, however small, a case is not moot. *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 307-308 (2012); *Chafin*, 568 U. S. 165, 172.

Further, where a class has been certified, as is the case here, it is necessary to show that no class members have remaining relief that can be awarded for the case to be moot. *Sosna v. Iowa*, 419 U.S. 393 (1975).

And, to the extent that Defendants may argue that the Supreme Court's action in *Kendall v. Doster,* 144 S. Ct. 481 (2023) directing a mootness vacatur is somehow controlling on the issues here, mootness regarding a preliminary injunction does not establish mootness involving the case. As this Court explained in *Ramsek v. Beshear*, 989 F.3d 494, 500 (6th Cir. 2021), and in *Ohio v. United States EPA*, 969 F.3d 306, 309-310 (6th Cir. 2020), and as the United States Supreme Court explained in *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394-95 (1981), *the case*, unlike the preliminary injunction, is not moot.

## ARGUMENT
## I.   THE CASE IS NOT MOOT, BECAUSE ALL OF THE HARM SUFFERED BY PLAINTIFFS WAS NOT REMEDIED

It is well-settled that new legislation does not *ipso facto* eliminate the discriminatory intent behind older legislation, nor does it moot a dispute regarding the violation of law. *See Hunter v. Underwood*, 471 U.S. 222, 232-33 (1985) (events over 80 years to change the terms of the law do not eliminate its original discriminatory intent); *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408-09 (5th Cir. 1991); *N. C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 240 (4th Cir. 2016).

17

Under the "collateral consequences" exception to mootness, even when the plaintiff's primary injury has ceased, the case is not moot if there remains other harm the court is capable of remedying. *See Sibron v. New York*, 392 U.S. 40, 53-59 (1968). And a continuing collateral consequence is one that provides the plaintiff with a "concrete interest" in the case and for which "effective relief" is available. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984).

In *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003), the Michigan Department of Corrections ("MDOC") repealed a series of contested work regulations while the case was still pending. Nevertheless, and for two distinct reasons, this Court held that the repeal did not moot the case. First, "there was no guarantee that MDOC [would] not change back to its older, stricter [r]ule as soon as [the] action [was] terminate[d]." *Id.* at 1035. Second, and more important to the facts here, because additional corrective relief could be awarded, and the amendment/rescission did not completely eradicate the harm associated with the contested policies, the case was not moot. *Id.*

Only the act of fully remedying all ongoing harm can moot a case, and it is undisputed that full relief has not occurred here. *See Wooten v. Housing Authority of Dallas*, 723 F.2d 390, 392 (5th Cir. 1983) (explaining that only receipt of "all of the relief sought" will moot the case); *see also Chen v. Allstate Ins. Co.*, 819 F.3d

18

1136, 1138 (9th Cir. 2016) (noting that a claim becomes moot when a plaintiff actually receives complete relief).

## II. THE FAILURE TO PROVIDE THE EQUITABLE REMEDY OF BACK PAY AND BACK RETIREMENT POINTS MEANS FULL RELIEF HAS NOT BEEN AFFORDED, AND THE CASE IS NOT MOOT

The declarations of SRA Dills and SMSgt Schuldes reveal that they (and reservist members of the class) lost retirement points and drill pay in 2022 which have not been restored to them and, without a Court order, will never be restored to them. [Dec. Schuldes, Doc. 125-1, PageID#5980-5981; Dec. Dills, Doc. 125-2, PageID#5982-5984.]

Federal courts have jurisdiction to award such equitable relief. Without question, RFRA permits damage claims. *See Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). As noted, this matter involves claims for back pay and retirement points, and those claims are justiciable as a matter of equitable relief and are within the authority of federal courts to award. *See U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2021); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014); *Schelske v. Austin*, 2023 U.S. Dist. LEXIS 163101 (NDTX 2023).

In *Schelske*, a separated soldier, who sought and was denied a religious accommodation to the COVID-19 mandate, then sued and sought equitable relief to include reinstatement and back pay. 2023 U.S. Dist. LEXIS 163101. This equitable

19

relief ultimately was denied to him via the corrective actions taken by the Secretaries of the Army and Defense, where those corrective actions were materially similar to those taken by the Secretary of the Air Force here.

In addressing the mootness issue, the *Schelske* Court first determined that exhaustion of military remedies did not apply to claims under RFRA. *Id.* at *93-*102. And, because back pay (and retirement points) was merely to restore that plaintiff to the position he held prior to the Army defendants' illegal action, they were justiciable. *Id.* at *105-*111. The facts of *Schelske* are the facts here. And in *Schelske*, after the denial of the Army defendants' motion to dismiss, the parties involved the court, which then appointed a magistrate judge, who caused a settlement in the *Schelske* matter.

Once again, the remaining relief here is justiciable because the restoration of lost drill pay and lost retirement points, withheld in 2022, is restitutionary in nature. *Id.,* citing *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) and *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990). The equitable remedy "is limited to 'restoring the *status quo* and ordering the return of that which rightfully belongs'" to the plaintiff. *Id.*, *citing Tull v. United States*, 481 U.S. 412, 424 (1987); *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946). *See also Harkless v. Sweeny Independent School Dist.*, 427 F.2d 319 (5th Cir. 1979).

Because back pay is equitable rather than legal relief, this Court can order

such relief. *See Kolstad v. ADA*, 527 U.S. 526 (1999); *West v. Gibson*, 527 U.S. 212, 119 S. Ct. 1906 (1999); *Schelske*, 2023 U.S. Dist. LEXIS 163101.[8] The remedy of restoration of back pay and retirement points, which is equitable in nature, runs to the official capacity of Defendants who improperly took all Reservist Plaintiffs off of pay and points status, and it is entirely within the purview of this Court to grant. *See Crugher v. Prelesnik*, 761 F.3d 610 (6th Cir. 2014); *Cimerman v. Cook*, 561 Fed. Appx. 447 (6th Cir. 2014); *Turker v. Ohio Dep't of Rehaabilitation & Corrections*, 157 F.3d 453, 459 (6th Cir. 1998) ("reinstatement [is] … prospective equitable relief").

"[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1946). And back pay is an equitable remedy distinct from damages. *See Albemarle Co. v. Moody*, 422 U.S. 405 (1975); *Howe v. City of Akron*, 801 F.3d 718, 744 (6th Cir. 2015) (explaining that back pay is an equitable remedy, part and parcel with eradicating the effects of discrimination).

In fact, not only is back pay an equitable remedy, but this Court has also held that back pay class actions are appropriate as equity class actions pursuant to FRCP

---

[8] Because Plaintiffs' back pay claims are under $10,000, the District Court had jurisdiction over those claims. *See* 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1331.

23(b)(2). *See Reeb v. Ohio Dep't of Rehab. & Corr., Belmont Corr. Inst.*, 435 F.3d 639, 649-650 (6th Cir. 2006); *Alexander v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 565 F.2d 1364, 1372 (6th Cir. 1977) ("A request for back pay does not preclude certification under [23(b)(2)]."); *Coleman v. GMAC*, 296 F.3d 443, 450 (6th Cir. 2002) (back pay is an equitable remedy); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (same).

In any event, even *if* back pay cannot be awarded (as noted above, it can), retirement credit and points plainly can be awarded as a matter of equity because RFRA affords "appropriate relief." 42 U.S.C. § 2000bb-1(c). Retirement credit has long been determined by courts to be equitable relief. *See Downie v. Independent Drivers Ass'n Pension Plan*, 934 F.2d 1168 (10th Cir. 1991); *Oppenheim v. Campbell*, 571 F.2d 660, 661-663 (D.C. Cir. 1978) (retirement credit is equitable relief); *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) (explaining wide-ranging equitable relief available for similar "appropriate" remedy statute).

And this equitable relief, under the constructive service doctrine, should "return successful plaintiffs to the position that they would have occupied 'but for' their illegal release from duty." *Barnick v. United States*, 591 F.3d 1372, 1379 (Fed. Cir. 2010) (quoting *Dilley v. Alexander*, 627 F.2d 407, 413, 200 U.S. App. D.C. 354 (D.C. Cir. 1980)).

Moreover, "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). Ultimately, this is nothing more or less than the "root and branch" relief envisioned as part of a final remedy by this Court in *Doster v. Kendall*, 48 F.4th 608, 615 (6th Cir. 2022).

In response to the District Court's request for briefing on mootness, and despite not raising it in their Answer and thus waiving the defense (*see* Part IV. below), Defendants argued that the requested equitable relief was foreclosed due to sovereign immunity. Defendants are wrong as a matter of law. The Tucker Act, 28 U.S.C. § 1346(a)(2), applies here because Plaintiffs' back pay claims are, individually, all under the $10,000 threshold, thus conferring jurisdiction on the District Court. In a like manner, the Reservists Pay Mandating Statute, 37 U.S.C. § 206, also applies and conferred jurisdiction on the District Court. *See also Ayala v. United States*, 624 F. Supp. 259 (SDNY 1985) (explaining that a claim for wrongful or illegal transfer to the individual ready reserves was stated, including for back pay, but because the amount of back pay exceeded $10,000, jurisdiction had to lie in the Court of Claims).

As the court in *Schelske* explained, Congress waived sovereign immunity for equitable claims, which extend to back pay. *Schelske*, 2023 U.S. Dist. LEXIS 163101 at *105-*106, citing *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir.

1994), *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990), and *Tull v. United States*, 481 U.S. 412, 424 (1987). The *Schelske* court also explained that, because of the nature of a RFRA claim, with "appropriate relief," equitable relief could be had that included back pay. 2023 U.S. Dist. LEXIS 163101. So too here.

Other federal courts are in accord that sovereign immunity does not apply to claims for back pay, whether under RFRA or any other applicable statutory scheme, because the nature of back pay claims is equitable relief. *See Hubbard v. Administrator*, EPA, 982 F.2d 531, 547-548 (D.C. Cir. 1992). The *Hubbard* Court explained that where a plaintiff is illegally denied a job or its emoluments, restitutionary relief applies and thus an "award of instatement and back pay gives Hubbard the precise thing to which he was entitled and therefore constitutes specific restitution." *Id.* "Although such an award involves money, that alone does not take it outside equity." *Id.*

*Hubbard*, in turn, cited *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1998), for the proposition that, in certain circumstances, sovereign immunity does not bar claims that involve money. The Supreme Court in *Bowen* explained that it was "an equitable action for specific relief" when a government employee sought "an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property or monies, ejectment from land, or injunction either directing or

24

restraining the defendant officer's actions.'" *Id; see also Ulmet v. United States*, 888 F.2d 1028, 1030-31 (4th Cir. 1989) (finding jurisdiction in the district court to award back pay, although sanctioning its decision to defer to the Claims Court); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1381 (10th Cir. 1990) (dicta), cert. denied, 112 L. Ed. 2d 860, 111 S. Ct. 799 (1991); *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir. 1983) (in rejecting a First Amendment damages claim, the court wrote: "As a federal employee, she could have sought equitable relief, i.e., reinstatement and back pay, pursuant to the Administrative Procedure Act"); *Nixon v. United States*, 290 U.S. App. D.C. 420, 938 F.2d 239, 251 n.4 (D.C. Cir. 1991). Other Courts are in agreement. *See Wenrich v. Empowered Mgmt. Sols. LLC*, 2019 U.S. Dist. LEXIS 130041 (D. Co. 2019) (explaining back pay claims were equitable in claim against Army, and not barred by sovereign immunity).

## III. THE DISTRICT COURT'S ERRONEOUS DETERMINATION THAT THE ISSUES OF BACK PAY AND POINTS WERE NOT PROPERLY RAISED IGNORES THE RECORD IN THIS CASE TO THE CONTRARY AND MISSTATES APPLICABLE FEDERAL LAW

The District Court erroneously determined that it could not reach the issues here because "retroactive" equitable relief was not sought in the Complaint. [Order, Doc. 127, PageID#5991-5994]. First, that is a too narrow reading of the Complaint when one considers the broad relief sought. For SRA Dills and SMSgt Schuldes, the Complaint stated that each faced imminent transfer to the Individual Ready Reserve, loss of pay, and loss of retirement benefits. [Ver. Compl., Doc. 1 ¶¶ 17, 20, 47;

PageID#5, 6, 12. The Complaint sought wide-ranging injunctive relief. *Id.* ¶¶ 70, 75; PageID#17-18.] And as noted above, the relief of reinstatement and restoration of back pay and points is prospective injunctive relief, not "retroactive" relief.

Second, it is clear that this type of relief was sought from the outset in this matter, including by way of Plaintiffs' preliminary injunction motion, and the fact that it was substantively addressed by Defendants in their Opposition to Plaintiffs' motion, thus constituting judicial estoppel (*see* Part IV below). Without question, Defendants explicitly argued that such relief was available, though not in a preliminary injunction order but rather **in a final remedy**. [Motion, Doc. 13, at PageID#579, 584; Opposition to PI, Doc. 25, PageID#1025.]

Third, the District Court's legal conclusion misapplies the law and ignores the significance of notice pleading. FRCP 54(c) states that, except in default judgment cases, every "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). In fact, this rule has been invoked by none other than the Government itself to permit relief that was not explicitly pleaded for, restitutionary relief, the very relief that was pleaded for and was and is sought here. *See United States v. Universal Mgmt. Servs.*, 191 F.3d 750, 759, fn.7 (6th Cir. 1999).

## IV.    DEFENDANTS WAIVED ANY SOVEREIGN IMMUNITY DEFENSE TO THESE CLAIMS BY FAILING TO ASSERT THAT DEFENSE IN THEIR ANSWER

Defendants failed to raise sovereign immunity as a defense in their Answer. [Answer, Doc. 78, PageID#4542-4553.] This Court has indicated that sovereign immunity is a defense that must be raised in the manner that a lack of personal jurisdiction must be raised. *See Ku v. State of Tenn.*, 322 F.3d 431, 432 (6th Cir. 2003); *Lawson v. Shelby Cry., Tenn.*, 211 F.3d 331, 334 (6th Cir. 2000) ("Consent may also take the form of a voluntary appearance and defense on the merits in federal court."); *see also Hunter v. Hamilton Cty. Bd. of Elections*, 850 F. Supp. 2d 795, 802 (S.D. Ohio 2012). Defendants' failure to raise a required pleading defense until filing their eleventh-hour brief on mootness is a waiver. Consequently, the District Court erred in relying on a defense Defendants waived, particularly where Defendants argued such relief was available to avoid such relief being granted in a preliminary injunction, to find this case is moot.

## V.    DEFENDANTS' ACTIONS, IN ARGUING AGAINST IRREPARABLE HARM BECAUSE BACK PAY AND RESTITUTIONARY RELIEF COULD BE AWARDED IN FINAL JUDGMENT, TRIGGERED JUDICIAL ESTOPPEL AGAINST THEM FROM LATER ARGUING, OR THE DISTRICT COURT FROM ADOPTING, THE OPPOSITE POSITION

As this Court has previously held, "the doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary

position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" (*quoting Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000))). Additionally, the "under oath" requirement is met where a party previously asserted an inconsistent position in a written filing and argued the merits of that position before the court. *Valentine-Johnson v. Roche*, 386 F.3d 800, 812 (6th Cir. 2004).

Judicial estoppel is intended "to protect the integrity of the judiciary by preventing a party from convincing two different courts of contradictory positions, which would mean that one of those two courts was deceived." *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020). For this reason, courts apply judicial estoppel where "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *New Hampshire v. Maine*, 532, 750 U.S. (2001) (*quoting Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)); *accord Teledyne*, 911 F.2d at 1218.

Although all "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," the Supreme Court has provided the following factors for courts to consider when applying the doctrine: (1) whether "a party's later position [is] clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. 742, 750-51 (internal quotations and citations omitted).

This is not the first time the DAF has been judicially estopped from pursuing bait and switch tactics. *Valentine-Johnson,* 386 F.3d 800, 812 ("In the interest of preventing the Air Force from 'abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment'…we conclude that judicial estoppel is applicable.") In an example of history repeating itself, Defendants, in opposing preliminary injunctive relief, argued below as follows:

> Second, **Plaintiffs appear to allege** that involuntary reassignment to the Individual Ready Reserve and loss of retirement constitutes irreparable harm. *See* Pls.' Mem. 2, 4, Doc. No. 13, PageID 579, 584. **But any such**

29

> **contention is meritless, as military administrative and disciplinary actions, including separation, are not irreparable injuries because the service member could later be reinstated and provided back pay if he prevailed on his claim**. *See*, e.g., *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985); *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984); *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992); *Church[*, 2021 WL 5179215, at \*17.

[*See* Govt. Opposition to Preliminary Injunction, at Doc. 25, PageID#1025) (emphasis added).]  If that were not true, of course, that would be grounds for a finding of irreparable harm in February and March, 2022, at a time that would have prevented the very harm at issue now.  *Ky. v. Biden*, 23 F.4th 585, 611, fn.19 (6th Cir. 2022) (explaining that where immunity likely barred money damages, the losses would be irreparable); *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) ("immunity typically makes monetary losses like these irreparable").

A preliminary injunction then issued in favor of Plaintiffs in March of 2022 that prevented any further adverse actions by Defendants. *Doster v. Kendall*, 596 F. Supp. 3d 995 (SDOH 2022). However, *because* Defendants argued, and the District Court accepted, that Plaintiffs were able to receive restitution in the form of back pay and back retirement points **in a final judgment**, and thus that sort of harm was not irreparable, the preliminary injunction relief did not include restoration of lost pay and lost points. *Id.* at 1019-1020; Govt. Opposition to Preliminary Injunction, at Doc. 25, PageID#1025.

Just as in *Valentine-Johnson,* all the elements of judicial estoppel are met here. When determining mootness, Defendants should have been foreclosed from arguing (and the District Court foreclosed from accepting) that the District Court could not award the restoration of lost pay and lost points as part of final relief, particularly when Defendants explicitly argued the contrary position in order to prevent a finding of irreparable harm at the preliminary injunction stage. Without question, Defendants' earlier argument was adopted by the District Court and kept that Court from awarding this remaining requested relief when it granted Plaintiffs a preliminary injunction. This kind of bait-and-switch tactic is exactly what judicial estoppel is designed to prevent. And the District Court erred in permitting it.

## CONCLUSION

The District Court erred as a matter of law in dismissing this matter on grounds of mootness. The case is not moot. The District Court's erroneous legal judgment should be reversed, with instructions to proceed to adjudicate the remaining claims in this case.

Dated: July 8, 2024                            Respectfully submitted,

*/s/Christopher D. Wiest*
Christopher Wiest (OH 00777931)      Thomas B. Bruns (OH 0051212)
Chris Wiest, Atty at Law, PLLC         Bruns Connell Vollmar & Armstrong
50 E. Rivercenter Blvd, Ste. 1280       4555 Lake Forrest Drive, Suite 330
Covington, KY 41011                    Cincinnati, Ohio 45242
Tel: 513/257-1895                       Tel.: 513/312-9890
chris@cwiestlaw.com                    tbruns@bcvalaw.com

31

Aaron Siri
Elizabeth A. Brehm
Wendy Cox
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: 888/747-4529
aaron@sirillp.com
ebrehm@sirillp.com
wcox@sirillp.com

*Attorneys for Plaintiff/Appellant*

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the foregoing upon Counsel for Defendants/Appellees, this 8 day of July 2024, by filing same with the Court via its CM/ECF system, and by electronic mail upon Counsel for Defendants/Appellees, which will provide notice to all parties Counsel.

*/s/ Christopher Wiest*

**CERTIFICATE OF COMPLIANCE**

As required by Fed. R. App. P. 32(g) and 6th Cir. R. 32(a), I certify that this Appellant's Brief contains 7,076 words. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

*/s/ Christopher Wiest*

**APPENDIX -- DESIGNATION OF THE DISTRICT COURT RECORD**

Plaintiff/Appellant, pursuant to Sixth Circuit Rule 30(g), designates the

following filings from the district court's electronic record:

| Doc. ID | Date | Description | Page ID |
|---|---|---|---|
| 1 | 2/16/22 | Verified Complaint | 1-22 |
| 11, 11-1 | 2/17/22 | Verified Appendix materials and certification | 324-327 |
| 11-2 | 2/17/22 | Verified Appendix materials – SECAF Vaccination Mandate | 328-329 |
| 11-3 through 11-21 | 2/17/22 | Verified Appendix materials | 331-573 |
| 13 | 2/22/22 | Motion for TRO and Preliminary Injunction | 578-599 |
| 13-1 | 2/22/22 | Declaration of Hunter Doster | 600 |
| 13-2 | 2/22/22 | Declaration of Colonel Jason Holbrook | 601-603 |
| 13-4 | 2/22/22 | Declaration of Peter McCullough, MD | 625-809 |
| 19-1 | 2/28/22 | Declaration of Hunter Doster | 943-947 |
| 25 | 3/8/22 | Opposition to Motion for Preliminary Injunction | 983-1030 |
| 25-8 | 3/8/22 | SECAF 12/7/21 Memoranda | 1130-1135 |
| 25-12 | 3/8/22 | Declaration of Col. Artemio Chapa | 1394-1403 |
| 25-14 | 3/8/22 | Declaration of Elizabeth Hernandez | 1414-1420 |
| 25-17 | 3/8/22 | Declaration of Col. James Poel | 1429-1450 |
| 30 | 3/16/22 | Reply to Response to TRO and Preliminary Injunction | 2038-2081 |
| 30-2 | 3/16/22 | Declaration with Transcript of hearing and DOJ admission in *Poffenbarger v. Kendall* attached. | 2084-2090 |
| 30-3 through 30-20 | 3/16/22 | Declarations of Plaintiffs in support of TRO and Preliminary Injunction | 2091-2149 |

| 33-1 through 33-6 | 3/23/22 | Notice of Filing Administrative Materials for Mosher, Stapanon, and McCormick | 2159-2193 |
|---|---|---|---|
| 36-1 through 36-7 | 3/23/22 | Notice of Filing Additional Administrative Materials for Colantanio, Dills, Doster, Mosher, Reineke, Schuldes, Theriault | 2326-2627 |
| 45 | 3/30/22 | Transcript of 3/25/22 Hearing with testimony of LTC Stapanon transcribed | 3064-3101 |
| 46-1 | 3/30/22 | Fourth Declaration of Hunter Doster | 3121-3124 |
| 46-3 | 3/30/22 | Religious Accommodation Denial Comparisons | 3152-3161 |
| 46-4 | 3/30/22 | Religious Accommodation Denial Comparisons | 3162-3164 |
| 47 | 3/31/22 | Preliminary Injunction Order | 3165-3205 |
| 48 | 4/6/22 | Transcript of remainder of 3/25/22 Hearing with testimony transcribed | 3206-3348 |
| 53-1 | 5/3/22 | Declaration of Andrea Corvi | 3762-3789 |
| 59-1 | 5/11/22 | Declaration of Wendy Cox | 4241-4242 |
| 72 | 7/15/22 | Order (including class certification) | 4448-4469 |
| 74-1 | 7/25/22 | Declaration W. Cox | 4519-4526 |
| 74-2 | 7/25/22 | Declaration C. Wiest | 4527 |
| 77 | 7/27/22 | Order on Class Preliminary Injunction | 4538-4541 |
| 85-1 | 8/18/22 | Deposition Testimony of Adm. Lescher in Navy case demonstrating lack of personal knowledge of Government affiants | 4666-4969 |
| 85-3 | 8/18/22 | Declaration of P. Pottinger | 4996-4998 |
| 86 | 8/19/22 | Order modifying class definition, modifying preliminary injunction, denying stay | 5007-5014 |
| 91-1 | 9/14/22 | Inspector General Report | 5042-5045 |
| | 3/3/2023 | NOTATION ORDER staying case | |
| 123 | 1/18/2024 | Order vacating preliminary injunction | 5950 |
| 124 | 2/9/2024 | Supplemental memorandum on mootness by Government | 5951-5958 |
| 125 | 2/9/2024 | Supplemental memorandum on mootness by Plaintiffs | 5966-5984 |
| 125-1 | 2/9/2024 | Declaration of C. Schuldes | 5980-5981 |

1

| 125-2 | 2/9/2024 | Declaration of J. Dills | 5982-5984 |
| 127 | 3/18/2024 | Order granting Motion to Dismiss on Mootness | 5987-5998 |
| 128 | 3/18/2024 | Final Judgment | 5999 |
| 132 | 5/8/2024 | Notice of Appeal | 6194-6195 |